UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE EVERITT AND | : | |
| KATHLEEN EVERITT, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-543 (VLB) |
| EDWARD DeMARCO, et al., | : | |
|     Defendants | : | March 9, 2009 |

### MEMORANDUM OF DECISION AND ORDER DENYING THE PLAINTIFFS' MOTION FOR AN EMERGENCY ORDER [Doc. #45]

The matter before the Court is the plaintiffs' motion for an emergency restraining order [Doc. #45] filed on behalf of Bruce Everitt, a member of the East Windsor Police Department ("EWPD") and his wife, Kathleen Everitt ("Everitt" and "Mrs. Everitt," respectively and the "Everitts" collectively) seeking to prevent the defendants from investigating and taking any action against the Everitts as a result of Everitt's testimony at a preliminary injunction hearing in this case.

This action was brought pursuant to 28 U.S.C. §§ 1983 and 1988 against the Town of East Windsor, its Chief of Police Edward DeMarco, its Police Captain Roger Hart and four of its five Police Commission members: Linda Sinsigallo, Richard Sherman, Lorraine DeVanney, and Cliff Nelson (the "Commission"). The Everitts seek to restrain retaliation in violation of the First Amendment right of speech. [Doc. #4]

The first proceeding in this case was a hearing on the plaintiff's application for a preliminary injunction which was conducted on June 4, 2008. On that occasion

1

Everitt testified in response to preliminary questions by his own counsel that he had never been suspended from the EWPD. [Doc. # 34] Believing his testimony was untruthful, the defendants commenced an investigation to establish that Everitt had been suspended. Based on their findings, the defendants filed a motion for a supplemental hearing to present "demonstrative evidence" that Everitt had given false testimony at the June 4, 2008 hearing. The supplemental hearing was held on August 27, 2008 and the defendants failed to introduce demonstrative evidence that Everitt testified falsely.

The EWPD continued its investigation. On October 21, 2008, the plaintiffs filed the instant motion for an emergency restraining order [Doc. #45] seeking to restrain the defendants from either criminally or internally investigating, harassing, threatening, or imposing discipline based on Everitt's testimony at the June 4, 2008 hearing. A hearing on that motion was held on December 3, 2008. For the reasons hereinafter set forth, the plaintiffs' motion for an emergency restraining order is DENIED.

## Facts

The Court makes the following findings of fact. Everitt has been a member of the EWPD for twenty eight years. His wife of 30 years does not work for the EWPD. The EWPD has a policy which requires police officers to follow a chain of command, pursuant to which all officer complaints must be lodged first with an officer's immediate supervisor.

On September 7, 2007, Everitt apprehended a suspect who was injured during

his arrest. Everitt was instructed by his sergeant to escort the suspect to the hospital for treatment. While en route to the hospital, Everitt discovered that he had injured his shoulder. He called Mrs. Everitt and told her that he was injured and had been ordered to escort an injured suspect to the hospital. He did not tell her that he had failed to request immediate medical treatment. She became incensed that he was not receiving immediate medical attention and called the EWPD dispatch asking if they knew that Everitt was injured and why he was responsible for escorting the detainee to the hospital while injured.

The next day, Everitt observed his wife typing letters while still angry about his lack of immediate medical treatment. Mrs. Everitt placed the letters in individual sealed envelopes each addressed to a member of the Commission and DeMarco and Hart. She placed the letters on the kitchen table and told Everitt that she was going to hand-deliver them to the Commission members at their next meeting. On the day of the next Commission meeting, Everitt hand-delivered the complaint letters to Commissioner Barton, who was at Everitt's house on unrelated business, and asked Barton to deliver the remaining letters at the meeting scheduled for that evening, despite his knowledge that they were complaints which, if made by him, would violate the chain of command policy. Barton delivered the letters to the addressees at the meeting.

The EWPD launched an investigation into the complaint. On September 21, 2008, DeMarco wrote to Mrs. Everitt stating that he had ordered Hart to investigate the complaint. DeMarco also asked Hart to investigate whether Everitt violated any

department internal policies and procedures. By a report dated January 11, 2008, Hart concluded that Everitt had violated the chain of command policy and committed conduct unbecoming an officer. On February 26, 2008, DeMarco sent a letter to Everitt stating that he would be suspended after returning to work from his light duty due to his shoulder injury. Everitt grieved the suspension to the Commissioners, who voted on March 12, 2008 to deny his grievance and go forward with the suspension. Barton voted against the suspension. On April 11, 2008, the Everitts brought this action and moved for a preliminary injunction against the enforcement of the suspension.

On July 17, 2008, the defendants moved for a new hearing on the grounds that Everitt's testimony at the June 4 hearing denying that he had ever been suspended from the EWPD was "demonstrably untruthful" and "significant and material to plaintiff's claimed entitlement to a preliminary injunction." [Doc. #35] This supplemental hearing to the plaintiffs' motion for a preliminary injunction was held on August 27, 2008. Counsel for the defendants questioned Everitt in relation to an incident in December, 1983. He stated that he had no present recollection of the incident, but knew that something had occurred.

> Q. As a result of this incident were you subjected to any discipline in the East Windsor Police Department?
> A. I was not.
> * * *
> Q. Do you have a recollection of any publicity regarding this incident that was reported in the media at the time and shortly thereafter and the employment consequences that were at least reported to be being brought upon you
> by the department? Do you have any recollection about that?

      **A. No.**

**[Doc. #67, at 7-8]**

**Everitt then stated that he recalled that he had been hospitalized around that time. He stated that he could not recall when after his hospitalization he had returned to work, that he could not recall any conversations about his work status with the former Chief Thomas Laufer, and that he could not recall whether the Commissioners had ever considered his employment status. His review of newspaper clippings from that time period did not refresh his recollection. He finally concluded that he had no recollection of any administrative or disciplinary consequences outside of his hospitalization.**

      **Captain Hart then testified that it was his belief that Everitt could have committed perjury or violated an internal policy with respect to his statement that he had not been suspended. He stated that he had begun an investigation into the December, 1983 incident, which involved searching the police records from the time. When he found no record of a suspension, he researched media reports in archives at the library, which revealed newspaper articles quoting the then Police Chief Laufer which led Hart to believe that Everitt had been suspended. He then went to the town clerk's office to search the police commission's minutes, and found nothing relating to the December, 1983 incident. He then opened Everitt's personnel file and found no reference to the incident.**

      **Hart testified that he found out at some point that Everitt had filed a grievance**

relating to Hart's search of his personnel file without sending him prior notice. Hart discussed the matter with DeMarco, who told him there was no basis for a grievance because Everitt was only entitled to notice about the investigation of non-criminal matters.

Hart was cross-examined as to any conflict of interest in investigating testimony given against him.

> Q: You didn't feel there was a conflict of interest in you personally handling a claim of perjury, as you put it, from a hearing that was held in federal court that you personally handled?
> A: I said potentially. And as I said its not – it's not for me to make a determination on that.
> Q: Who told you to investigate that?
> A: Who told me?
> Q: Yeah.
> A: The operations commander of the agency.
> Q: Who is that?
> A: That's me.
> Q: So you told yourself to conduct this investigation?
> A: Well, in conjunction with the chief [DeMarco]

[Doc. #66, at 40] When he testified, Laufer stated that he also had a general recollection of an incident, but no specific recollection of what had occurred. He testified that although DeMarco and Hart had gone to his house to attempt to elicit recollection by showing him newspaper articles, his recollection was not refreshed.

On August 28, 2008, DeMarco sent Everitt a letter [Doc. #61, Plaintiff's Ex. 4] stating, "On June 4, an internal complaint was generated regarding a potential policy violation during your sworn testimony . . . In this instance, the evidence

and testimony ultimately available did not demonstrate inaccuracies or contradictions in connection with your testimony. The matter is now resolved and the complaint has been classified as *not sustained*." [Emphasis in original.]

Subsequently, DeMarco instructed Hart to search Laufer's correspondence files in the police archives. Hart discovered a document apparently signed by Laufer referring to the December, 1983 incident and referencing a suspension.

On September 10, 2008, at a meeting of the Commission, DeMarco made a presentation about the ongoing case. At the meeting, Everitt presented his grievance to the commissioners. He argued that an investigation was still ongoing, and that under his collective bargaining agreement, he was entitled to notice of an ongoing investigation. DeMarco denied that the actions he had taken to research Everitt's disciplinary history in the EWPD constituted an "investigation," and that no notice was required if the investigation was possibly criminal in nature.

The Police Commission's secretary, Darlene Kelly, originally recorded in the minutes that the criminal investigation was ongoing. [Doc. #61, Plaintiff's Ex. 1] She testified that Captain Hart "yelled at" her about the inclusion of mention of the investigation in the minutes, and that thereafter Police Commission Chairman Cliff Nelson ordered her to redact the minutes to remove any reference to an ongoing investigation. [Doc. #61, Plaintiff's Ex. 4] She did so. [Doc. #61, Plaintiff's Ex. 2] On September 18, 2008, she was terminated by Nelson from her position as secretary.

On October 20, 2008, the Everitts moved for an emergency restraining order enjoining the defendants from continuing their investigation into Everitt's statements at the June 4, 2008 hearing.

On December 3, 2008, a hearing on the motion for an emergency restraining order was held before the Court. The defendants, through counsel, stated on the record that arrest was not a possibility, but that the internal investigation of Everitt Everitt could resume and result in discipline, referral to an outside agency, or termination. DeMarco testified that should an internal investigation be required, he would refer the investigation to an outside agency, such as another town's police department. He admitted that the only previous cases where this has been done were investigations in which both criminal and internal penalties were possible.

Discussion

The Everitts have moved for an "emergency order" pursuant to Federal Rule of Civil Procedure 65(b). Because that Rule applies to orders entered without notice, and notice and a hearing was afforded in this case, the Court will treat their motion as one under Rule 65(a) for a preliminary injunction.

"To obtain a preliminary injunction a party must demonstrate: (1) that it will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor." Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342,

348-49 (2d Cir. 2003). Where "an injunction of governmental action taken in the public interest is sought, the moving party may not rely on the less rigorous 'serious questions' alternative of the second prong, but instead must demonstrate a likelihood of success on the merits." Karmel v. City of New York, 200 F.Supp.2d 361, 364-65 (S.D.N.Y. 2002). However, actions taken pursuant to police regulations not adopted by the legislature or other state rulemaking agency are not entitled to as much deference as police actions taken pursuant to rules made by "reasoned democratic process." Id. at n. 2. As the Everitts do not state which standard they are relying on, and the defendants argue on the basis of the more rigorous standard without objection from the plaintiffs, the Court will defer to the parties and determine whether the Everitts have met a burden of likelihood of success on the merits.

A. Comity

The threshold question in this instance is whether the Court should intervene in the internal actions of a municipal police department. The defendants have cited several cases in which federal courts have abstained on the basis of comity from interfering with the disciplinary actions of a state agency. The Everitts would distinguish those cases and argue that federal courts have a duty to intervene when such disciplinary actions are brought in bad faith, or as retaliation for exercise of First Amendment rights to free speech or redress in court.

In Alvarez v. The City of New York, 2 F.Supp.2d 509 (S.D.N.Y. 1998), a New

York City police officer initiated a Title VII action against the city and the Police Department of the City of New York (<u>Alvarez I</u>). During the pendency of that case, the plaintiff was accused by the police department of misusing confidential information. The plaintiff then settled the case and executed a general release. After settlement, the plaintiff was directed to appear for disciplinary proceedings relating to the use of confidential information in <u>Alvarez I</u>, whereupon he filed a second lawsuit (<u>Alvarez II</u>) alleging First Amendment retaliation and moved for a preliminary injunction to stay the investigation. The court held that monetary relief could remedy any damage from the investigation, and that a state court, not a federal court, was the proper forum to seek an injunction against any actual consequences that a disciplinary proceeding might seek to impose.

However, in <u>Mullins v. The City of New York</u>, 554 F.Supp.2d 483 (S.D.N.Y. 2008) <u>remanded for further explanation</u> 2009 WL 180314, 08-1839-cv (2d Cir. January 27, 2009) the court distinguished <u>Alvarez II</u> as inapplicable to a case in which judicial proceedings were ongoing at the time related internal investigation was sought to be enjoined. In <u>Mullins</u>, several police officers brought suit against the police department for violations of the Fair Labor Standards Act (FLSA). The police department launched a criminal and internal investigation with the assistance of the counsel from the FLSA case for alleged perjury during the deposition of one of the plaintiffs. The court granted a temporary restraining order and then a preliminary injunction against any further investigation of the plaintiffs or any pursuit of disciplinary proceedings related to the plaintiffs'

participation in the FLSA lawsuit. Among the factors that the court considered in distinguishing Alvarez II were that the judicial proceeding was ongoing and that the investigators were defendants or in the chain of command of the defendants in the ongoing judicial proceeding.[1] The defendants' interrogation of the plaintiff concerned the plaintiff's testimony on core areas of disputed fact in the case. The court concluded that the defendants could not predicate a perjury investigation on the facts underlying the plaintiffs claims. The investigation in this case is distinguishable. Everitt's denial of any prior suspensions came in response to his own attorney's preliminary questioning. His suspension or non-suspension is immaterial to his claims in this lawsuit. His interest in speaking on the subject of the suspension is therefore much less compelling than the interests of the Mullins plaintiffs.

As Hart admitted that he lacked any jurisdiction to investigate perjury in a federal proceeding in Hartford, any criminal investigation into Everitt's testimony could only be related to a referral to another law enforcement agency for possible prosecution, to impeach Everitt's testimony, to assure the integrity of EWPD investigations and prosecutions, or animus. The Court finds that DeMarco and Hart were substantially motivated to investigate Everitt's statements at the June 4, 2008 hearing out of a desire to effectuate departmental policies and to defend

---

[1] In Alvarez v. The City of New York, 31 F. Supp. 2d 334 (S.D.N.Y. 1998) (Alvarez III), the Alvarez II court did eventually enter a preliminary injunction against the police department once the investigation expanded to include allegations of misconduct in the prosecution of Alvarez II, not only Alvarez I.

against this litigation and not to retaliate against the Everitts for bringing this lawsuit. By the testimony of Hart and DeMarco, the two highest-ranking officers in the EWPD have expended dozens of hours of their own official time combing through boxes of documents in archives, reviewing microfiche in the library, interviewing witnesses, and testifying in Court in order to show that Everitt was suspended in 1984.

If Everitt is shown to have given false testimony, his ability to testify as a peace officer may be seriously compromised, as the integrity of police investigations and conduct are critical to their ability to function as the protectors of the public. Furthermore, a defendant must be free to defend him or herself, and the Commission's ability to defend itself would be greatly hampered if it could not even attempt to challenge the witnesses against it.

Everitt's testimony that he had no recollection of the events of December, 1983 is implausible. The Court doubts that an event of that magnitude, which was readily testified to by Mrs. Everitt, would have no ramifications. The gravity of the incident alone raised doubts that Everitt testified truthfully when he testified that he had no recollection of the incident or its aftermath. The letter found in Chief Laufer's files attests to Hart and DeMarco's honest suspicion of Everitt's testimony. They acted on the basis of a factually grounded belief that Everitt testified falsely.

The Court's intervention in this case would hamper the ability of the EWPD to effectively operate or defend this case, and would not aid the Everitts. The

defendants have stated on the record that criminal prosecution is not a possibility. Moreover, any chilling effect on the Everitt's speech would not be remedied by an interim injunction, as the possibility that Everitt would eventually be disciplined would remain. See Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 512 (2d Cir. 2005) ("[P]reliminary injunctive relief would likely be ineffective, because the alleged irreparable harm [chilling of protected activity] stemmed not from the interim discharge but from the threat of permanent discharge, which is not vitiated by an interim injunction.")

The facts of this case warrant the Court's abstention from injunctive relief on the basis of comity, as a defendant police department must be allowed to defend itself and ensure the credibility of its officers. However, even if the Court were to intervene, the Court concludes that the Everitts have not shown irreparable injury that would entitle them to interim relief.

B. Irreparable Harm

The Everitts argue that they will suffer irreparable harm if the defendants retaliate against them for exercising their First Amendment rights through bad faith investigation, harassment, or discipline of Everitt. The defendants respond that an investigation itself cannot constitute irreparable harm, and argue that any employment actions taken thereafter would not be in response to this lawsuit or Mrs, Everitt's speech. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). However, in the preliminary injunction context, a critical

13

element in the Elrod holding was that "irreparable harm could only be found when 'First Amendment rights were either threatened or in fact being impaired at the time that relief was sought.'" Ford v. Reynolds, 326 F.Supp.2d 392, 402 n.4 (E.D.N.Y. 2004), quoting Elrod, 427 U.S. at 373. The Second Circuit has found that irreparable harm in the context of employment is only presumed when a plaintiff can show that the exercise of First Amendment rights directly resulted or would directly result in adverse employment actions. See American Postal Workers Union v. U.S. Postal Service, 766 F.2d 715, 721(2d Cir. 1985). In government personnel cases, courts apply "a particularly stringent standard for irreparable injury." Id. "[W]e have consistently given greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public . . ." Waters v. Churchill, 511 U.S. 661, 674 (1994).

      The Court is mindful of the Everitt's right to petition the Court for redress of grievances. It is also mindful of the defendants' right to defend themselves. In an adversarial proceeding, reasonable latitude must be given both to the plaintiff to prosecute its claims and to the defendant to challenge the evidence against it. The mere investigation of facts concerning a party's own conduct can inflict no harm in and of itself. If any harm results, that harm would not be caused by the investigation of Everitt's conduct but rather by the conduct itself. If it were the law that witnesses could falsely testify with impunity, the charge of perjury would not exist. See, e.g., Gates v. City of Dallas, 729 F.2d 343 (5th Cir. 1984) ("We reject

the argument that mere exposure to criminal perjury or false-report charges unconstitutionally inhibits conduct protected by the First Amendment. The Constitution affords necessary 'breathing space' by protecting erroneous statements honestly made, but it does not protect knowingly false statements or false statements made with reckless disregard of the truth.") The fact that the underlying claim is that the Everitts' First Amendment rights were violated does not absolve Everitt of the obligation to testify truthfully and to be challenged if he does not. See BE & K Const. Co. v. N.L.R.B., 536 U.S. 516, 531 (2002) (the First Amendment does not protect false speech or baseless, retaliatory petitions); Ashcroft v. Free Speech Coalition, 535 U.S. 234, 246 (2002) ("The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children").

The Everitts have not presented any evidence or testimony from which the Court can conclude that their speech is actually being chilled by the defendants' actions, unlike the plaintiffs in Alvarez III. They have vigorously prosecuted this case and given testimony on several occasions. Everitt has presented several grievances to the Commission and is actively engaged in administrative proceedings as well. The Court therefore concludes that the Everitts have not demonstrated any irreparable injury that could be prevented by enjoining the defendants' actions.

For the above-stated reasons, the plaintiffs' motion for an emergency

**restraining order [Doc. #45] is DENIED.**

                                                **IT IS SO ORDERED.**

                                                          /s/
                                          **Vanessa L. Bryant**
                                  **United States District Judge**

**Dated at Hartford, Connecticut:  March 9, 2009.**