UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE EVERITT AND | : | |
| KATHLEEN EVERITT, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:08-cv-543 (VLB) |
| EDWARD J. DeMARCO, JR. et al., | : | |
| Defendants. | : | March 30, 2010 |

MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #77]

The plaintiffs, Bruce and Kathleen Everitt (collectively "Plaintiffs" or "the Everitts"), filed this action for damages as well as injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 and the First and Fourteenth amendments of the United States Constitution. The Plaintiffs name as defendants the Town of East Windsor (hereinafter "the Town"), its Chief of Police Edward DeMarco, its Police Captain Roger Hart, and four present or former Police Commission members: Linda Sinsigallo, Richard Sherman, Lorraine DeVanney, and Cliff Nelson. They assert the following claims: first, that the Defendants violated the First Amendment by suspending Bruce Everitt in retaliation for Kathleen Everitt's speech; second, that the Defendants violated the First Amendment by harassing and persecuting the Plaintiffs in retaliation for filing this lawsuit; third, that the Defendants violated the Plaintiffs' right to intimate association by disciplining Bruce Everitt in retaliation for Kathleen Everitt's speech; and fourth, that the

Defendants violated the Plaintiffs' right to equal protection by disciplining Bruce Everitt in retaliation for Kathleen Everitt's speech.

Presently pending before the Court is the Defendants' motion for summary judgment.  See Doc. #77.  The Defendants argue that there is no evidence in the record to support the Plaintiffs' claims against any defendant, that the Plaintiffs have failed to establish municipal liability against the Town, and that the individual Defendants are entitled to qualified immunity.  For the reasons stated below, the Defendants' motion is GRANTED IN PART and DENIED IN PART.  Specifically, summary judgment is granted in favor of the Defendants on the Plaintiffs' equal protection claim.  Summary judgment is also granted in favor of the Defendants on the Plaintiffs' claim alleging that the Defendants retaliated against them for filing this lawsuit, but only to the extent that the Plaintiffs are seeking money damages on this claim.  The Plaintiffs' intimate association claim and claim alleging that the Defendants retaliated against Kathleen Everitt for her speech by suspending Bruce Everitt shall go forward to trial.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The following facts relevant to the Defendants' motion for summary judgment are undisputed unless otherwise noted.  Bruce Everitt has been a member of the East Windsor Police Department (hereinafter the "EWPD") for twenty-eight years.  Kathleen Everitt, his wife of thirty years, does not work for the EWPD.  Edward DeMarco is the Chief of Police in East Windsor.  Roger Hart is a Captain for the EWPD.  Defendants Nelson, Sinsigallo, Sherman and DeVanney

2

are, or at relevant times were, members of the East Windsor Police Commission (hereinafter the "Commission").

On September 7, 2007, Bruce Everitt and other members of the EWPD arrested an individual following a physical struggle to take him into custody. Both Everitt and the suspect experienced injuries during the struggle.  Everitt was instructed by his sergeant to escort the suspect to the hospital for treatment. Everitt did not inform anyone at the scene that he had been injured and did not complain about this assignment, nor did he indicate that he was physically unable to complete it.

While en route to the hospital, Everitt called his wife and told her that he was injured during the course of an arrest but that he had been instructed to escort an injured suspect to the hospital.  Following that conversation, Kathleen Everitt called the EWPD dispatch to complain about the treatment of her husband in light of his injury.  After Bruce Everitt finished work that evening, Kathleen Everitt escorted him to the hospital, where she remained with him during his interactions with the medical staff.

Later that night, Kathleen Everitt informed her husband that she was upset and that she was planning to write a letter to the members of the Commission. The following day, Kathleen Everitt typed a letter on her computer at home, and placed copies of the letters she prepared in individual sealed envelopes, each addressed to a member of the Commission as well as defendants DeMarco and Hart.  She placed the envelopes on the kitchen table.  Bruce Everitt observed his

wife doing these things, but denies any knowledge of the specific contents of the letter.  He understood that Kathleen Everitt intended to hand-deliver the letters at on upcoming Commission meeting.

On September 12, 2007, one of the Commission members, James Barton, was present in the Everitts' house on unrelated business.  Bruce Everitt gave the complaint letters to Commissioner Barton, and asked him to deliver them to their intended recipients at the Commission meeting scheduled for that evening. Kathleen Everitt was not home at the time.  Barton read his copy of the letter while in the presence of Bruce Everitt and delivered the remaining letters to their addressees at the meeting.

On September 21, 2007, DeMarco wrote to Kathleen Everitt stating that he had ordered Captain Hart to investigate her complaint.  DeMarco also asked Hart to investigate whether Bruce Everitt had violated any internal department policies and procedures.  Hart concluded that there had been no violation of departmental policy in the handling of Everitt's injury.  He further concluded that Everitt had violated the EWPD's chain of command policy requiring officer complaints to be lodged first with an officer's immediate supervisor, willfully disregarded EWPD directives and orders, and engaged in conduct unbecoming an officer.  Following further proceedings related to the letter, the Commission imposed a seven-day suspension on Everitt.  Everitt filed a grievance of this planned discipline with the Connecticut Board of Mediation and Arbitration, which remains pending.

On April 11, 2008, the Everitts brought this action and moved for a

4

preliminary injunction against the enforcement of the suspension.  The Court held a hearing on the Plaintiffs' application for preliminary injunction on June 4, 2008.  During the hearing, Bruce Everitt testified that he had never previously been suspended from the EWPD.  See Doc. #34.  Believing this testimony to be untruthful, the Defendants commenced an investigation to establish that Everitt had in fact previously been suspended.  Based upon their findings, the Defendants filed a motion for a supplemental hearing to present "demonstrative evidence" that Everitt had given false testimony at the June 4, 2008 hearing.  The supplemental hearing was held on August 27, 2008, and the Defendants failed to introduce demonstrative evidence proving that Everitt had testified falsely at the prior hearing.

Following the supplemental hearing, the EWPD continued its investigation. In the interim, the parties agreed to stay enforcement of Bruce Everitt's suspension until a trial on the merits of the case.  See Doc. #51.  On October 21, 2008, the Plaintiffs filed a motion for an emergency restraining order seeking to restrain the Defendants from either criminally or internally investigating, harassing, threatening, or imposing discipline against Everitt based upon his testimony at the June 4, 2008 hearing.  See Doc. #45.  A hearing on that motion was held on December 3, 2008.  By Memorandum of Decision dated March 9, 2009, the Court denied the Plaintiffs' motion for an emergency order on the basis of comity, finding that the Court's intervention in the Defendants' investigation would interfere with the EWPD's ability to defend itself and ensure the credibility

5

of its officers.  <u>See</u> Doc. #73.  The Court further held that the Everitts had failed to demonstrate irreparable injury because they did not present any evidence that their speech was actually being chilled by the Defendants' actions.  <u>Id.</u>  Finally, the Court found the Plaintiffs' motion for a preliminary injunction moot in light of the Defendants' agreement to stay enforcement of Everitt's suspension until the conclusion of proceedings in this Court.  <u>Id.</u>

On May 5, 2009, the Defendants filed the instant motion for summary judgment.  <u>See</u> Doc. #77.  The Plaintiffs filed their opposition thereto on May 26, 2009.  <u>See</u> Doc. #78.

Subsequently, on June 17, 2009, the Court ordered the Defendants to show cause why default should not enter against them on the Plaintiffs' third claim for relief, which asserts that the Defendants retaliated against them for exercising their First Amendment right to petition the Court, due to their failure to either answer the Plaintiffs' Amended Complaint or move for summary judgment on that claim.  <u>See</u> Doc. #82.  The Defendants' response to the order to show cause explained that they had failed to address this claim because counsel perceived that the Court's denial of the Plaintiffs' motion for emergency relief, which addressed claims and conduct identical to that set forth in their third cause of action, obviated the need to further address that aspect of the Amended Complaint.  <u>See</u> Doc. #87.  The Defendants belatedly filed an answer to the Amended Complaint, and also filed a motion for leave to file a supplemental memorandum in support of their motion for summary judgment arguing that they

are entitled to summary judgment on the Plaintiffs' third cause of action.  The
Court granted the Defendants' motion and permitted the filing of their
supplemental memorandum in the interests of securing a just, speedy, and
inexpensive determination of this action pursuant to Fed. R. Civ. P. 1.  See Doc.
##90, 92.

## II.  STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery
and disclosure materials on file, and any affidavits show that there is no genuine
issue as to any material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  The Court "construe[s] the evidence in the
light most favorable to the non-moving party and . . . draw[s] all reasonable
inferences in its favor."  Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004).
"[I]f there is any evidence in the record that could reasonably support a jury's
verdict for the non-moving party, summary judgment must be denied."  Am. Home
Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir.
2006) (internal quotation marks omitted).  "The moving party bears the burden of
showing that he or she is entitled to summary judgment."  Huminski, 396 F.3d at
69.  "[T]he burden on the moving party may be discharged by 'showing'—that is
pointing out to the district court—that there is an absence of evidence to support
the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105
(2d Cir. 2002).  "If the party moving for summary judgment demonstrates the
absence of any genuine issue as to all material facts, the nonmoving party must,

7

to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor."  Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

## III.  DISCUSSION

### A.  First Amendment Retaliation

The Plaintiffs assert two distinct First Amendment retaliation claims.  First, they allege that the Defendants' conduct in disciplining Bruce Everitt for Kathleen Everitt's speech hindered her ability to exercise her First Amendment rights and that she fears further retaliation if she complains about the EWPD in the future. Second, the Plaintiffs allege that they have been harassed and persecuted by the Defendants as a result of their filing of this lawsuit.

### 1.  Suspension

The Plaintiffs allege that the Defendants violated Kathleen Everitt's First Amendment rights by disciplining Bruce Everitt in retaliation for her letter to the Commission criticizing the EWPD's handling of her husband's injury.

The elements of a First Amendment retaliation claim are dependent upon the "factual context" of the case.  Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008).  A public employee who alleges First Amendment retaliation must prove the following:  "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action."

8

Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotation marks and citations omitted).  A private citizen, on the other hand, must show:  "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  Unlike a public employee, the speech of a private citizen "need not have been on a matter of public concern for it to fall within the protection of the First Amendment[.]" Williams, 535 F.3d at 77.

The threshold issue here is whether the speech in question was made by Bruce Everitt, a public employee, or Kathleen Everitt, a private citizen.  The Defendants spend the majority of their brief arguing that Bruce Everitt has no claim for First Amendment retaliation under the Supreme Court's analysis in Connick v. Myers, 461 U.S. 138 (1983), Pickering v. Bd. of Educ., 391 U.S. 563 (1968), and their progeny.  In Connick, the Supreme Court held that a public employee must show that he spoke "as a citizen upon matters of public concern" rather than "as an employee upon matters of personal interest" in order to establish a claim for First Amendment retaliation."  461 U.S. at 147.  In Pickering, the Supreme Court held that a court addressing a claim of First Amendment retaliation by a public employee must balance "the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it

9

performs through its employees." **391 U.S. at 569**.

The Plaintiffs argue, however, that they are not asserting a claim for First Amendment retaliation on behalf of Bruce Everitt, and therefore that <u>Connick</u> and <u>Pickering</u> are inapplicable.  Instead, they argue that the Defendants retaliated against Kathleen Everitt, the author of the letter, by disciplining her husband for her speech.  They assert that, as a private citizen, Kathleen Everitt's letter criticizing the EWPD's handling of her husband's injury was entitled to First Amendment protection, and that her speech has been chilled as a result of the Defendants' discipline of her husband in retaliation for her letter.

Whether the speech in question is attributable to Bruce Everitt or Kathleen Everitt is a highly fact-specific inquiry inappropriate for resolution on a motion for summary judgment.  The Defendants argue that Kathleen Everitt did not engage in speech at all because she herself never delivered the letters to the Commission.  Instead, the record reveals that after Kathleen Everitt wrote the letter, she placed copies of the letter in envelopes addressed to each Commission member as well as DeMarco and Hart, sealed them, and placed them on a table at her home.  Thereafter, while Kathleen Everitt was not present, Commissioner Barton was at the Everitts' home on unrelated matters.  Bruce Everitt asked Commissioner Barton to deliver the envelopes to the remaining addressees at the next Commission meeting, which he agreed to do.  The Defendants assert that, had her husband not given the letters to Commissioner Barton, Kathleen Everitt may not have ever delivered the letters herself, and

10

therefore the speech contained in the letter was not attributable to her.

The Plaintiffs contend, on the other hand, that Kathleen Everitt was the sole author of the letters, that she intended to deliver them to the Commission members, and that they were in fact delivered to their intended recipients. Clearly, the question of whether Kathleen Everitt intended to send the letters to the Commissioners is a question of fact to be determined by the jury.  See Universal Calvary Church v. City of New York, No. 96CIV.4606, 2000 WL 1538019, at *22 (S.D.N.Y. Oct. 17, 2000) ("The question of intent is a question of fact for the jury.").  If the jury determines that Kathleen Everitt was indeed the sole author of the letter and that she intended to deliver copies of the letters to the Commission, the mere fact that Bruce Everitt delivered the letters to Commissioner Barton who then delivered the letters to the remaining addresses cannot defeat her claim for First Amendment retaliation.  As the Plaintiffs persuasively argue, a contrary holding would create the nonsensical result that only the individual who actually delivers a communication, rather than the author of the communication herself, would have standing to bring a First Amendment claim.

The Defendants further argue that, even if the letter was attributable to Kathleen Everitt, her First Amendment claim must fail because she made statements in the letter with knowledge of or reckless disregard for their falsity. The Second Circuit has recognized that "[f]alse speech, as well as hyperbole, is still entitled to First Amendment protection, as long as it is not made with knowledge or reckless disregard of its falsity."  Reuland v. Hynes, 460 F.3d 409,

11

414 (2d Cir. 2006) (citing N.Y. Times Co. v. Sullivan, 376 U.S. 254, 271 (1964)).  In order to demonstrate that Kathleen Everitt's letter was not entitled to First Amendment protection, the Defendants must show that the letter "(1) would reasonably have been perceived as an assertion of fact, (2) was false, and (3) was made with knowledge or reckless disregard of its falsity."  Reuland, 460 F.3d at 414.

The Defendants assert that Kathleen Everitt made false statements in her letter with knowledge and reckless disregard of their falsity because she relied solely upon her husband's description of the events surrounding his injury and failed to pursue other, readily available sources of information, such as discussing the situation with Captain Hart or the other EWPD supervisors on duty on the day of the injury.  However, the Defendants cite no authority for the proposition that Kathleen Everitt was not justified in relying on her husband's statements and that she was required to conduct an investigation to verify the accuracy of his statements before her speech would be protected.  Indeed, the standard articulated by the Second Circuit in Reuland does not place the burden on a private citizen to conduct a full investigation and independent verification of all relevant facts and circumstances before criticizing a public official.  The record before the Court on summary judgment reflects that Kathleen Everitt drafted the letter in reliance upon facts gleaned from her husband, who obviously had first-hand knowledge of the circumstances surrounding his injury, when he described to doctors at the hospital how he was injured.  Whether Kathleen

12

Everitt made false statements in her letter, and if so, whether they were recklessly or knowingly made, are questions of material fact to be decided by the jury, not by the Court as a matter of law on summary judgment.

Finally, the Defendants claim that, even if the letter can be attributed to Kathleen Everitt, the speech contained therein was a "collaborative effort" by both Plaintiffs and therefore the Commission had a right to discipline Bruce Everitt for that speech.  The Defendants contend that Bruce Everitt "collaborated" in preparing the letter because he was aware of the contents of the letter and, with knowledge of those contents, asked Commissioner Barton to deliver copes of the letter to the remaining members of the Commission.  However, whether Bruce Everitt was aware of the specific contents of the letter and whether the fact that he asked Commissioner Barton to deliver the letter make him responsible for the contents of the letter are also questions of fact to be determined by the jury, and are therefore inappropriate for resolution on a motion for summary judgment.

## 2. Investigation

The Plaintiffs further allege that they have been harassed and persecuted by the Defendants as a result of their filing of this lawsuit.  As outlined above, this allegation is contained in the Plaintiffs' third cause of action, which is the subject of the Defendants' supplemental memorandum in support of their motion for summary judgment.  The Defendants argue that this claim must be dismissed because it is based upon their investigation of Bruce Everitt's testimony given during the preliminary injunction hearing on June 4, 2008, and the Court

13

previously held in its March 9, 2009 Memorandum of Decision denying the Plaintiffs' motion for an emergency order that the investigation was not done in order to retaliate against the Plaintiffs.  In that ruling, the Court found that "DeMarco and Hart were substantially motivated to investigate Everitt's statements at the June 4, 2008 hearing out of a desire to effectuate departmental policies and to defend against this litigation and not to retaliate against the Everitts for bringing this lawsuit."  Doc. #73 at 11-12.  The Defendants have not identified any undisputed facts pertaining to the Plaintiffs' third cause of action in either their original summary judgment papers or their supplemental memorandum.  Instead, they incorporate by reference previous filings and rulings in connection with the Plaintiffs' applications for a preliminary injunction and emergency order in support of their argument.

"In order to survive a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must bring forth evidence showing that he has engaged in protected First Amendment activity, he suffered an adverse employment action, and there was a causal connection between the protected First Amendment activity and the adverse employment action."  Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007).  "If a plaintiff makes a sufficient showing of each of these elements, summary judgment is not appropriate unless the defendant establishes as a matter of law that he would have taken the same adverse employment action even absent the protected conduct."  Id.

It is well-established that the filing of a lawsuit, such as the instant action,

14

is constitutionally protected by the First Amendment.  See Columbo v. O'Connell, 310 F.3d 115, 118 (2d Cir. 2002) ("[T]he right of a private individual to sue and defend in the courts is protected by the First Amendment because it is the right conservative of all other rights [which] lies at the foundation of orderly government.") (internal quotation marks omitted).  The dispositive inquiry for purposes of the instant motion is whether Bruce Everitt suffered an adverse employment action in retaliation for the Plaintiffs' filing of this lawsuit.

The Plaintiffs argue that Bruce Everitt suffered an adverse employment action because he was subjected to what they claim was a bad faith criminal investigation by the Defendants in retaliation for filing this case.  The Defendants, on the other hand, point to the Court's ruling on the Plaintiffs' motion for an emergency order, which found that the Defendants conducted their investigation into whether Bruce Everitt had perjured himself during the June 4, 2008 hearing "out of a desire to effectuate departmental policies and to defend against this litigation and not to retaliate against the Everitts for bringing this lawsuit."  Doc. #73 at 11-12.

As an initial matter, the Court notes that, although it may consider the findings of fact and conclusions of law made on the Plaintiffs' motion for an emergency order, those findings and conclusions are not binding on the Court when deciding a motion for summary judgment.  See Lanvin, Inc. v. Colonia, Inc., 776 F. Supp. 125, 127-28 (S.D.N.Y. 1991) ("In determining a motion for summary judgment, we may consider the Court's findings of fact and conclusions of law in

15

a prior motion for preliminary injunction.  However, those earlier findings are not binding . . .") (citing University of Texas v. Camenisch, 451 U.S. 390, 395 (1981)). This is particularly true where, as here, the Plaintiff has demanded and is entitled to a jury.  See Dorsey v. McQuillian, No. 94 Civ. 3578(HB), 1997 WL 772779, at *2 (S.D.N.Y. Dec. 15, 1997) ("[I]nferences concerning credibility that were previously made in ruling on the [plaintiff's] motion for a preliminary injunction cannot determine the [defendants'] Rule 56(c) motion and should not be used to support propositions that underpin the decision to grant the motion for summary judgment.") (quoting Country Floors, Inc. v. A Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1062 (3d Cir. 1991)).  Therefore, contrary to the Defendants' argument, the Court's earlier ruling made in the context of the Plaintiffs' motion for an emergency order is not dispositive of the Plaintiffs' retaliation claim on summary judgment.

In Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000), the Second Circuit concluded that an "adverse employment action" is generally characterized as a "materially adverse change in the terms and conditions of employment."  Galabya involved a claim of discrimination brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq.  Subsequently, in Zelnik v. Fashion Institute of Technology, 464 F.3d 217, 225-26 (2d Cir. 2006), the Second Circuit clarified that the Galabya standard for determining whether an employment action was adverse in the ADEA context is more demanding than the standard applied to First Amendment retaliation claims.

16

The <u>Zelnik</u> Court explained that the appropriate legal test in First Amendment retaliation cases is whether the alleged acts "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Id. at 225; see also Dillon v. Morano, 497 F.3d 247, 254 (2d Cir. 2007).  As a general rule, "whether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." Zelnik, 464 F.3d at 226 (citation omitted).

Numerous district court cases have held that an investigation of a public employee, standing alone, does not constitute an adverse employment action. See, e.g., Radolf v. University of Connecticut, 364 F. Supp. 2d 204, 225 (D. Conn. 2005) (granting summary judgment in favor of defendants on plaintiff's First Amendment retaliation claim on the basis that an internal investigation into his possible commission of fraud did not constitute an adverse employment action); McInnis v. Town of Weston, 375 F. Supp. 2d 70, 84-85 (D. Conn. 2005) (holding that internal affairs investigations directed at the plaintiff could not, in themselves, be found to constitute adverse employment action); Rider v. Town of Farmington, 162 F. Supp. 2d 45, 53 (D. Conn. 2001) ("In this case, [the plaintiff] was investigated, but the conclusion was that the charges against her could not be substantiated, and she was not disciplined.  Therefore, she did not suffer any adverse employment action."); Boylan v. Arruda, 42 F. Supp. 2d 352, 357 (S.D.N.Y. 1999) ("I conclude that simply undergoing an investigation is not sufficient to constitute 'adverse employment action,' even though the allegedly retaliatory

17

investigation in this case was criminal rather than civil in nature and was conducted by an outside agency rather than internally."). However, these cases pre-date Zelnik and apply the Galabya standard focusing upon whether the investigation at constituted a "materially adverse change in the terms and conditions of employment." Galabya, 202 F.3d at 640. The parties have not cited, and the Court is unaware of, any post-Zelnik First Amendment retaliation cases concluding that an investigation *per se* does not constitute an adverse employment action. In light of the highly fact-specific nature of the appropriate inquiry, the Court cannot conclude, as a matter of law, that the Defendants' investigation of Bruce Everitt would not "deter a similarly situated individual of ordinary fitness from exercising his . . . constitutional rights." Zelnik, 464 F.3d at 225.

## B.  Intimate Association

The Plaintiffs next allege that the Defendants violated their right to intimate association by disciplining Bruce Everitt for Kathleen Everitt's letter. The Supreme Court has recognized the constitutional right of association in two distinct forms:  first, the right to "enter into and maintain certain intimate human relationships"; and second, "the right to associate for the purpose of engaging in those activities protected by the First Amendment - speech, assembly, petition for the redress of grievances, and the exercise of religion." Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984). The Second Circuit further defined the contours of the right to intimate association in Adler v. Pataki, 185 F. 3d 35, 44 (2d Cir. 1999).

18

In that case, the Second Circuit held that "a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."  Id.  The plaintiff in Adler held the position of deputy counsel for litigation at a New York State public agency.  Id. at 38.  He alleged that he was terminated from his position in retaliation for a lawsuit that his wife filed against the New York Attorney General.  Id. at 40.  The Second Circuit concluded that his claim invoked the protection of the First Amendment:

> [T]he New York action challenged here . . . seeks to penalize [the plaintiff] with loss of his job because of its displeasure with the conduct of his wife.  If the First Amendment accords an individual some right to maintain an intimate marital relationship free of undue state interference, Adler's claim properly invokes the protection of that Amendment.   His claim is grounded on the most intimate of relationships, marriage, and warrants an appropriately high degree of protection.

Id. at 44.

Here, as in Adler, Bruce Everitt contends that he was disciplined by the Defendants in retaliation for his wife's speech.  The Plaintiffs further contend that this discipline directly interfered with their right to intimate association, causing them to fight more often and creating a significant strain upon their marriage.  See Pl. Ex. 1, ¶ 15; Pl. Ex. 2, ¶ 14.  The Plaintiffs fear that Bruce Everitt will continue to be punished for his wife's speech and for his relationship with her.  Pl. Ex. 1, ¶ 15; Pl. Ex. 2, ¶ 16.  In addition, the Plaintiffs claim that they will both be damaged by Bruce Everitt's pending suspension because they file a joint income

19

tax return and therefore any economic injury inflicted on one spouse affects them equally.  Pl. Ex. 2, ¶ 14.  Finally, they assert that Kathleen Everitt was directly injured because the Defendants' actions in disciplining her husband cast a chill on her right to free speech.  Pl. Ex. 2, ¶ 15.

The Defendants argue, on the other hand, that the Plaintiffs' intimate association claim fails because Bruce Everitt was not disciplined for his wife's speech.  Instead, they claim that he was disciplined for violating EWPD regulations, including violation of the chain of command, willful disregard of EWPD directives and orders, and conduct unbecoming an officer.  However, as discussed above, whether or not Bruce Everitt was disciplined as a result of his speech in delivering his wife's letters to Commissioner Barton or for the content of his wife's speech expressed in the letter are questions of material fact for the jury.  Because the Second Circuit has held that a public employee's right to intimate association is violated where his employer takes an adverse action against him in retaliation for his spouse's exercise of her First Amendment rights, the Defendants' motion for summary judgment is denied as to the Plaintiffs' intimate association claim.

## C.  Equal Protection

Finally, the Plaintiffs allege that the Defendants violated their right to equal protection of the law under the Fourteenth Amendment by taking punitive actions against Bruce Everitt in retaliation for Kathleen Everitt's constitutionally protected criticism of the EWPD.  The Equal Protection Clause of the Fourteenth

Amendment is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). In order to succeed on an equal protection claim, the plaintiff must prove that: "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff]." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000). Alternatively, failing proof of selective treatment based on impermissible considerations, a plaintiff may demonstrate an equal protection violation by proving that the defendants "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). This latter type of claim is often referred to as a "class of one" equal protection claim. Id.

The Court holds that the Plaintiffs' equal protection claim fails under either a selective enforcement or "class of one" theory because they have neither alleged nor produced any evidence that they were treated differently from similarly situated individuals. Indeed, Kathleen Everitt admitted during her deposition that she is unaware of any other spouses of Town police officers who have written a letter of complaint to the Commission. See Def. Ex. K at 84. Accordingly, the Defendants are entitled to summary judgment on the Plaintiffs' equal protection claim.

### D.  Qualified Immunity

The individual Defendants assert that they are entitled to qualified immunity because their actions did not violate any clearly established constitutional right possessed by the Plaintiffs.  The doctrine of qualified immunity shields government officials performing a discretionary function "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzerald, 457 U.S. 800, 818 (1982).  In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving qualified immunity claims.  First, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right.  Id. at 201.  Second, if the plaintiff satisfies the first step, the court must then decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  Id.

Subsequently, in Pearson v. Callahan, 129 S.Ct. 808 (2009), the Supreme Court ruled that the Saucier approach for determining whether a government official is entitled to qualified immunity should no longer be considered mandatory.  Following Pearson, lower court judges are permitted to exercise their discretion in determining which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.  Id. at 817.  The Pearson Court observed, however, that the Saucier approach is often beneficial, such as in cases where it "may be difficult to decide

**22**

whether a right is clearly established without deciding precisely what the constitutional right happens to be." Id. at 818.

The Court has already analyzed whether the Plaintiffs have established a genuine issue of material fact as to whether the Defendants violated their constitutional rights.  The Court dismissed the Plaintiffs' equal protection claim, but found that there are genuine issues of material fact with respect to whether the Defendants violated the Plaintiffs' First Amendment rights and right to intimate association.  Therefore, the Court must now determine whether these latter rights were clearly established at the time of the Defendants' alleged misconduct.  The Second Circuit has considered the following three factors in determining whether a particular right was clearly established:  "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful."  Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991); see also Saucier, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

### 1. First Amendment Retaliation - Suspension

The Court will first consider whether qualified immunity bars the Plaintiffs' claim that the Defendants retaliated against Kathleen Everitt by suspending her

husband as a result of her letter criticizing the EWPD's handling of his injury.  As discussed above, the outcome of this claim depends upon resolution of the issue of whether the speech contained in the letter was attributable to Bruce Everitt or Kathleen Everitt.  This determination involves questions of material fact to be decided by the jury at trial.  Assuming for purposes of this motion that the speech was attributable to Kathleen Everitt, clearly established law supports Kathleen Everitt's First Amendment right as a private citizen to criticize government officials.  See Huminski v. Corsones, 396 F.3d 53, 73 (2d Cir. 2005) (holding that defendants were not protected by qualified immunity as a matter of law with respect to plaintiff's claim that they violated his First Amendment right to criticize public officials); Kaluczky v. City of White Plains, 57 F.3d 202, 210 (2d Cir. 1995) ("The right to criticize public officials is at the heart of the First Amendment's right of free speech.").  This right is subject to the limitation that statements made with "knowledge or reckless disregard of [their] falsity" are not entitled to First Amendment protection.  Reuland, 460 F.3d at 414.  However, as discussed above, whether Kathleen Everitt made false statements in her letter, and if so, whether they were recklessly or knowingly made, are also questions of material fact to be decided by the jury.  Where, as here, facts material to the qualified immunity analysis remain in dispute, summary judgment is inappropriate.  See Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) ("summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain"); Thomas v. Roach, 165 F.3d 137, 143 (2d Cir.

24

1999) ("Summary judgment on qualified immunity is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

## 2.  First Amendment Retaliation - Investigation

Next, the Court must determine whether qualified immunity bars the Plaintiffs' claim that they were retaliated against for filing the instant lawsuit.  The basis for this claim is the Defendants' investigation of Bruce Everitt to determine if he had given false testimony at the June 4, 2008 preliminary injunction hearing.  As discussed above, the Plaintiffs' right to file a lawsuit is constitutionally protected by the First Amendment.  See Columbo, 310 F.3d at 118.  In order to succeed on their claim, however, the Plaintiffs must further show that Bruce Everitt suffered an adverse employment action, and that there was a causal connection between the Plaintiffs' filing of this lawsuit and the adverse employment action.  See Dillon, 497 F.3d at 251.  The test for determining whether an employment action is adverse is whether it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  Zelnik, 464 F.3d at 225.

In their opposition to the instant motion for summary judgment, the Plaintiffs have failed to cite any Supreme Court or Second Circuit cases establishing that an investigation, standing alone, can constitute an adverse employment action.  Moreover, prior to Zelnik, a consistent line of cases from district courts within the Second Circuit held that an investigation alone does not constitute an adverse employment action.  See, e.g., Radolf, 364 F. Supp. 2d at

225; McInnis, 375 F. Supp. 2d at 84-85; Rider, 162 F. Supp. 2d at 53; Boylan, 42 F. Supp. 2d at 357.  These cases applied a more demanding standard than the test set forth in Zelnik, focusing upon whether the investigation at issue constituted a "materially adverse change in the terms and conditions of employment." Galabya, 202 F.3d at 640.  Nevertheless, given the lack of any authority within the Second Circuit establishing that an investigation alone can constitute an adverse employment action, the Court concludes that Bruce Everitt's right to be free from an investigation regarding his testimony at the June 4, 2008 hearing was not clearly established at the time of the events giving rise to the Plaintiffs' claim.

Accordingly, the Court finds that the individual Defendants are entitled to qualified immunity insofar as the Plaintiffs seek money damages on their third cause of action.  However, they are not entitled to qualified immunity insofar as the Plaintiffs seek declaratory or injunctive relief on this claim.  See Adler, 185 F.3d at 48 ("Qualified immunity shields the defendants only from claims for monetary damages and does not bar actions for declaratory or injunctive relief.").

### 3.  Intimate Association

Finally, the Court must address whether qualified immunity bars the Plaintiffs' intimate association claim.  The Court finds the Second Circuit's decision in Adler to be controlling as to this claim.  In Adler, the Second Circuit held that an employer's adverse action against a public employee in retaliation for his wife's exercise of First Amendment rights stated a cause of action for violation of the employee's right to intimate association.  185 F. 3d at 44.  The

26

facts in <u>Adler</u> were analogous to the facts in the present case.  There, as here, the plaintiff was a public employee.  As in this case, the plaintiff in <u>Adler</u> alleged that he was punished for his wife's exercise of her First Amendment rights.  The Second Circuit concluded that these facts, if true, would suffice to establish a violation of the First Amendment.  In so holding, the Second Circuit observed that the right to maintain an intimate marital relationship warrants a "high degree of protection" from undue state interference.  <u>Id.</u>

In light of <u>Adler</u>, the Plaintiffs' right to be free from undue state interference with their right to maintain an intimate marital relationship was defined with reasonable specificity at the time of the Defendants' actions.  Whether those actions were objectively reasonable under the circumstances of this case presents a mixed question of law and fact that is inappropriate for resolution on a motion for summary judgment where, as here, material facts are in dispute.  <u>See</u> <u>Kermen v. City of New York, 374 F.3d 93, 111 (2d Cir. 2004)</u> ("Nor was it permissible for the district court to rule on remand as a matter of law that [the defendant] was entitled to qualified immunity on the basis that his conduct was objectively reasonable.  Objective reasonableness is a mixed question of law and fact when, as here, material historical facts are in dispute.").  Consequently, qualified immunity does not bar the Plaintiffs' intimate association claim at this stage of the litigation.

### E.  <u>Municipal Liability</u>

The Defendants also argue that the Plaintiffs' claims against the Town

must be dismissed because the Commission did not possess final authority to impose discipline upon Bruce Everitt.  Under the Supreme Court's decision in Monell v. Dep't of Social Services, 436 U.S. 658 (1978), "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  Id. at 694.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is liable under § 1983."  Id.  The Supreme Court subsequently established that "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability."  City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (citing Pembauer v. Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion)).  Whether a particular municipal official has "final policymaking authority is a question of state law."  Id. at 124.

Contrary to the Defendants' argument, Connecticut law vests the Commission with final authority with respect to disciplinary decisions against Town police officers.  The East Windsor Charter authorizes the creation of a Police Commission and the election of five Commission members for a total term of four years.  See East Windsor Charter, Chapter 3, Section 302(G), *available at* http://www.eastwindsor-ct.gov/Public_Documents/FOV1-000142EA/toc_old.  By Connecticut statute, members of a police commission established by a town "have general management and supervision of the police department of such town . . . , shall make all needful regulations for the government thereof not

28

contrary to law and may prescribe suitable penalties for the violation of any such regulation, including suspension or removal from office of any officer or member of such police department." Conn. Gen. Stat. 7-276.  Further, "[s]uch board [of police commissioners] shall have the sole power of appointment, promotion and removal of the officers and members of such police department, under such regulations as it adopts for the purpose . . ." Id.

The Defendants' argument that the Commission was not a final policymaking authority because its decision to suspend Everitt may be overturned by the Connecticut Board of Mediation and Arbitration is meritless. As an initial matter, the factual basis for this argument is undeveloped.  The record merely reflects that Bruce Everitt filed a grievance contesting his suspension through his union, but does not explain the authority establishing his right to file such a grievance or the procedure for resolving the grievance. Presumably, the grievance was filed pursuant to a collective bargaining agreement between the union and the EWPD.  However, the Defendants cite no legal authority for the proposition that a Police Commission vested with the power to discipline police officers pursuant to state law cannot be considered a final policymaking authority where its decisions are subject to review by a neutral arbitrator pursuant to a collective bargaining agreement.  Endorsing the Defendants' argument would lead to the illogical conclusion that the Commission lacks final policymaking authority because this Court could ultimately decide that the Defendants' conduct was unconstitutional and therefore overturn its decision

to suspend Bruce Everitt.  Therefore, because the Commission had final authority to impose discipline upon Everitt pursuant to state and local law, and further because the Defendants have cited insufficient facts and no law to contradict the provisions of municipal and state law cited above, the Town may be held liable under 42 U.S.C. § 1983 if the Plaintiffs are able to demonstrate at trial that their constitutional rights were violated by the Defendants.

### IV.  CONCLUSION

Based upon the above reasoning, the Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The Plaintiffs' equal protection claim is dismissed.  The Plaintiffs' claim alleging that the Defendants retaliated against them for filing this lawsuit is dismissed to the extent that the Plaintiffs are seeking money damages as to this claim, but may proceed to the extent that they are seeking declaratory or injunctive relief.  The Plaintiffs' intimate association claim and claim alleging that the Defendants retaliated against Kathleen Everitt for her speech by suspending Bruce Everitt shall go forward.  A separate order will be issued scheduling this case for trial.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  March 30, 2010.

30